LEVI C. SMALL ET AL.

*vs.*

REUBEN A. WALLACE ET ALS.

Washington.    Opinion June 11, 1925.

*Under the common law all citizens of the State have a free right of fishery in all its rivers where the tide ebbs and flows as well as in the sea, and such right is in no way effected by the ownership of the soil where it is being exercised, but such right must be exercised with due regard for the rights of others.*

In the instant case the plaintiffs' right to recover, if there be such, does not arise from their alleged ownership of the soil from which they set their nets, but from their right to share in the common right of fishery reserved to the public. Hence evidence as to their title to the shore is entirely immaterial and was properly excluded.

Fish swimming in tidal water as well above as below low water mark are the property of the first taker regardless of the ownership of the soil under the water where they were taken.

On exceptions and motion.   An action on the case to recover damages which plaintiffs alleged they suffered in fishing for smelts with nets in the tide waters of Narraguagus River by having their rights interfered with by defendants who also set nets near those of plaintiffs.   Plaintiffs contended that they had the exclusive right to fish at the place where the nets were set by reason of the ownership of the shores, and further contended that they had the right to fish under the common law rules without molestation by defendants. The jury found for the defendants and the plaintiffs entered exceptions to the exclusion of evidence and filed a motion for a new trial. Exceptions overruled.   Motion overruled.

The case is fully stated in the opinion.

*Gray & Sawyer,* for plaintiffs.

*J. W. Sawyer and B. W. Blanchard,* for defendants.

SITTING: CORNISH, C. J., PHILBROOK, MORRILL, WILSON, STURGIS, JJ.

STURGIS, J. This is an action on the case for an alleged interference with the plaintiffs' smelt fishing rights in the Narraguagus River in the town of Milbridge, the river at the locus in question being an arm of the sea where the tide ebbs and flows. The plaintiffs, who were in possession under claim of title of certain land adjoining the river on the west, in January, 1923, began their season's smelt fishing, setting out from their shore three nets, dropped down through the ice with the tails of the nets drawn back up stream. Approximately two hundred feet down river the defendants set a line of similar nets out from the opposite shore of the river of which at that point they were the owners. The plaintiffs concede that the defendants set two nets and began fishing before the plaintiffs set any nets, but complain that after their three nets had been set the defendants increased the number of their nets and extended them far out into the river toward the western shore, in effect overlapping the plaintiffs' nets and closing the open passage for fish to such an extent that practically all smelts were diverted from the plaintiffs' nets and their catch was substantially reduced. The verdict was for the defendants and the case comes before this court on the plaintiffs' exceptions and motion for a new trial.

EXCEPTIONS.

The exceptions are not in proper form. The first exception is to "so much of the charge of the presiding justice as excludes from the consideration of the jury all claims of the plaintiffs under the statute declared on." The second exception is to "the exclusion of evidence as to title to the shore." To be sure the entire charge and the transcript of the evidence are made a part of the exceptions, but this form of stating exceptions has received the repeated disapproval of this court. It meets neither the requirements of the statute nor the decisions based thereon. The portion of the charge complained of is not stated. The questions asked and the evidence excluded do not appear. It is not a "summary" bill. R. S., Chap. 82, Sec. 55; *McKown* v. *Powers*, 86 Maine, 291; *Dennis* v. *Packing Co.*, 113 Maine, 159; *State* v. *Howard*, 117 Maine, 69. However, in view of the

importance of the questions raised we shall waive these technical objections and consider the exceptions.

The evidence indicates that the nets used by both parties were bag-nets as defined by Webster and recognized and authorized for use "in the winter fishery for smelts" by R. S., Chap. 45, Sec. 78. Neither breadth of construction of the statute nor precedent offered or found includes these nets within the terms "weirs" or "traps," the erection of which is prohibited in tide waters below low water mark in front of the shore or flats of another without the owner's consent by R. S., Chap. 4, Sec. 125. There was no error in excluding this statute and the plaintiffs' claims under it from the consideration of the jury.

The plaintiffs' right to recover in this action, if there be such, does not arise from their alleged ownership of the shore from which they set their nets. None of the parties acquired any advantage or superior right to the fish that swam the river by virtue of their riparian proprietorship. While, since the Colonial Ordinance of 1641 flats not exceeding one hundred rods in width are the property of the owner of the adjacent upland or his grantee, that title is held subject to the right of the public to fish in the waters upon them. The riparian proprietors, by reason of the location of their property and the exclusive right to use their land in connection with fishing have certain advantages not common to other citizens, but their right to fish arises not out of their ownership of the soil but from their right to share in the common right of fishery reserved to the public. *Duncan* v. *Sylvester*, 24 Maine, 482, 486; *Matthews* v. *Treat*, 75 Maine, 594. No infringement of the private rights of the plaintiffs as alleged owners of property on the west shore of the river is shown. In fact both plaintiffs and defendants set their inner nets below low water mark. The presiding Justice properly excluded as immaterial, evidence as to the title to the land held by the plaintiffs.

## MOTION.

The rights and duties of the parties are to be determined by the common law rules of the free right of fishery which is common to all citizens of this State and extends to all rivers where the tide ebbs and flows as well as in the sea. Both the plaintiffs and the defendants had the right to take fish from the tidal waters of the Narraguagus

River, not only in the deep water or channel but also in shore wherever the water flowed at flood tide, for the fish swimming in tidal water as well above as below low water mark are the property of the first taker, regardless of the ownership of the soil under the water where they were taken. *Parker* v. *The Cutler Milldam Company*, 20 Maine, 353; *Matthews* v. *Treat*, 75 Maine, 594, 597. This right of free fishing in tide water being open to all the people in common must be exercised by each person with due regard to the rights of others, that is, without abuse of the right or unnecessary interference with or injury to the other in the reasonable exercise of the same right. *Duncan* v. *Sylvester*, supra, 26 C. J., 604.

The plaintiffs' contentions that the defendants interfered with and injured their free right of fishing for smelts were sharply controverted by the defendants, and much evidence was presented on the one side and the other bearing upon the number and character of nets set by the defendants, their location in the river and the incidents and uncertainties of winter smelt fishing. Upon all the evidence the jury found for the defendants. A careful examination and consideration of the testimony does not convince us that the verdict was manifestly wrong, and the entry must be

*Exceptions overruled.*
*Motion overruled.*