WALDO S. O'DONNELL, PETITIONER

RE: CONTRACT CARRIER SERVICE

Kennebec.    Opinion, January 31, 1952.

*Wilfred A. Hay,* for petitioner.

*Hutchinson, Pierce, Atwood & Scribner,*

*Sumner Clark,* for Maine Central R. R. Co.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.  MURCHIE, C. J., did not sit.

NULTY, J.   On Exceptions certified from Public Utilities Commission under Section 66, Chapter 40, R. S., 1944.

The petitioner, Waldo S. O'Donnell, is engaged in the business of transporting freight and merchandise for hire in contract carriage by motor vehicle.  He holds a permit issued by the Public Utilities Commission authorizing the transportation of coal, asphalt or tar mix, rock, sand and gravel from certain designated places in Maine to other places specified in the said permit.  He seeks further authority to transport bulk cement from points in Maine to road, bridge and mixing plant and construction jobs at points in Maine.

Due notice was given by the Commission and a public hearing on the petition was held at which the Maine Central Railroad Company appeared as a protestant. After hearing, the Commission denied the petition, the finding, order and decree being as follows:

> "We find from the evidence presented that the petition of Waldo S. O'Donnell should be denied.
>
> It is therefore, Ordered, Adjudged and Decreed
>
> That the petition of Waldo S. O'Donnell for authority to transport bulk cement as hereinbefore set forth be, and the same hereby is, denied."

The Bill of Exceptions contains the three following exceptions which were allowed:

> "To the aforesaid finding, and to the order and decree of the Public Utilities Commission based thereon, the petitioner excepts, on the ground that the aforesaid finding, order and decree thereon are erroneous in law in these respects, namely: *that there was no substantial evidence to support said finding, order and decree; that the said finding, order and decree are contrary to the evidence and the applicable law; and that said finding, order and decree are an arbitrary exercise by the Public Utilities Commission of the discretionary power vested in it by Section 21, paragraph III of Chapter 44 of the Revised Statutes relating to the issuance of permits to contract carriers."* (Underlining ours)

This court has very recently, on two occasions, pointed out to the profession its duties and powers in cases coming before it on exceptions to rulings of the Public Utilities Commission. See *Public Utilities Commission* v. *Gallup* (1949), 143 Me. 290, 62 A. (2nd) 166, and *Public Utilities Commission* v. *Johnson Motor Transport,* 147 Me. 138, 84 A. (2nd) 142. It should not be necessary to repeat them at length except for the fact that they still appear to be somewhat misunderstood in certain particulars.

We said in *Hamilton* v. *Power Co.* (1922), 121 Me. 422, 423, 117 A. 582, 583, and many times since in other cases with respect to the Public Utilities Commission and the power of review of its findings by this court:

> "Acting within its powers, its orders and decrees are final except as a review thereof by the regularly constituted courts is authorized under the Act creating the Commission.
>
> "Such and the only power of review is found in R. S., Chap. 55, Sec. 55, as amended by Chapter 28, Public Laws 1917," (now R. S. Chap. 40, Sec. 66) "and relates only to questions of law. 'Questions of Law may be raised by alleging exceptions to the rulings of the Commission on an agreed statement of facts, or on facts found by the Commission.'
>
> "The facts on which the rulings of the Commission are based must be either agreed to by the parties or be found by the Commission. Facts thus determined upon are not open to question in this court, unless the Commission should find facts to exist without any substantial evidence to support them, when such finding would be open to exceptions as being unwarranted in law."

We also said *In Re Samoset Company* (1926), 125 Me. 141, 143, 131 A. 692, 693, with respect to the rules of procedure governing bills of exceptions:

> "This court desires to further add, that the form of a bill of exceptions in such cases should, so far as possible, conform to the practice in the courts of law, Sec. 59, Chap. 55, R. S.," (now Sec. 70, Chap. 40, R. S. 1944) *"Hamilton* v. *Water Co.,* 121 Me. 422; 117 A. 582, and should be a summary statement of the contentions of the excepting party and, without referring to other documents or the evidence, except in cases where it is claimed that facts were found without any evidence, should show wherein the excepting party was aggrieved by the alleged ruling."
>
> \* \* \* \* \* \* \* \* \* \*
>
> "This court has no power, as it is requested to do in brief of counsel, to review the entire pro-

ceedings before the Commission. It is expressly precluded from reviewing the findings of fact, unless they are made without any evidence to support them. It cannot review the judgment of the Commission as to public policy or the discretion vested in it under this statute. *Maine Motor Coaches, Inc.* v. *Public Utilities Commission,* 125 Me. 63, 130 Atl. 866; *Hamilton* v. *Water Co.* supra."

We said in *Public Utilities Commission* v. *Gallup, supra,* at Page 293:

"The power of this court to review proceedings of the Public Utilities Commission on exceptions is conferred upon it by R. S. Chap. 40, Sec. 66."

This section provides that questions of law may be raised, viz., by alleging exceptions to the ruling of the Commission (1) "on an agreed statement of facts," (2) "or on facts found by the Commission,". In discussing this question in *Public Utilities Commission* v. *Gallup, supra,* we said at Page 295:

"before an exception can be taken of which this court will have cognizance, there must either be an agreed statement of facts, or facts found by the Commission, and a ruling upon the one or the other as the case may be. The ruling thus referred to, therefore, must be the final ruling which disposes of the case. In other words, the exceptions which are to come before this court are to the ruling, to wit, the order or decree of the Commission upon the facts in the case. It is this ruling which we must find erroneous in law before we can sustain exceptions thereto."

\* \* \* \* \* \* \* \* \* \*

"It is to such erroneous rulings (orders or decrees) made upon either agreed statements of facts or facts found by the Commission and, *to such rulings only,* that the statutory right of exception is given."

We said in *Gilman* v. *Telephone Co.*, 129 Me. 243, 248, 151 A. 440:

> "Questions of fact pertaining to a case are for consideration and decision by the Public Utilities Commission.
>
> "If a factual finding, basic of an order of the Commission, is supported by any substantial evidence, that is, by such evidence as, taken alone, would justify the inference of the fact, the finding is final. *Hamilton* v. *Caribou, etc., Company*, 121 Me. 422, 424. Here, as with a jury verdict, a mere difference of opinion between court and commission, in the deductions from the proof, or inferences to be drawn from the testimony, will not authorize the disturbance of a finding.
>
> "On the other hand, whether, on the record, any factual finding, underlying order and requirement, is warranted by law, is a question of law, reviewable on exceptions. *Hamilton* v. *Caribou, etc., Company*, supra."

With the principles heretofore enunciated, we come now to the three exceptions. The first two exceptions are similar and will be considered together. In substance they assert the claim that there was no substantial evidence to support the finding, order and decree and that the finding, order and decree are contrary to the evidence and the applicable law. These two exceptions really mean that the Commission found facts to exist without any substantial evidence to support them and, in accordance with our decisions, particularly *Hamilton* v. the *Power Company, supra,* this finding would be open to exceptions as being unwarranted in law. These two exceptions have no merit. They are controlled by the decision in *Gilman* v. *Telephone Co., supra,* and the cases cited herein and many others. It does not seem necessary for this court to analyze and minutely review the evidence upon which the findings by the Commission were based because in our opinion, after a careful examination of the record and the findings of fact by the Com-

mission, we are satisfied that there was substantial evidence to amply support the factual findings of the Commission and under our decisions cited herein the findings are final and cannot be disturbed.

Having disposed of the first two exceptions, we come now to the third which is:

> "that said finding, order and decree are an arbitrary exercise by the Public Utilities Commission of the discretionary power vested in it by Section 21, paragraph III of Chapter 44 of the Revised Statutes relating to the issuance of permits to contract carriers."

The applicable part of said Par. III provides:

> "No application for a permit shall be granted by the Commission until after a hearing, nor shall any permit be granted if the Commission shall be of opinion that the proposed operation of any such contract carrier will be contrary to the declaration of policy of Sections 17 to 30, inclusive, - - - -."

It is apparent from this last quoted statute that the Legislature has given the Public Utilities Commission the function of utilizing its discretion in matters coming before it such as operating motor trucks for hire on the highways of our State. That function, by the language of the statute, is a discretionary grant of power and is imposed upon the Commission and not upon the court. It is a clear legislative delegation of discretion and unless that discretion is abused by the Commission this court has no power to intervene and it is not reviewable on exceptions. See *Maine Motor Coaches, Inc.* v. *Public Utilities Commission, supra; Hamilton* v. *Water Co., supra.* The same law is applicable to the action of a single justice and we recently held in *Sard* v. *Sard,* 147 Me. 46, 53, 83 A. (2nd) 286:

> "When the law invests the justice with the power to exercise discretion, that exercise is not reviewable on exceptions."

The same rule enunciated in the *Sard* case is applicable to the Commission with respect to its power to exercise discretion and the reviewability of the same on exceptions. An exception, based upon the discretionary power of the Commission, has no merit unless the ruling so made raises a question of law or shows a clear abuse of discretion. An examination of the record convinces us that the opposite is true in this case.

*Exceptions overruled.*

Murchie, C. J., did not sit.